IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

BARNEY MILLER,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　　)　　　Case No. 08-1228-WEB
　　　　　　　　　　　　　　　　　)
STATE OF KANSAS,　　　　　　　　)
HIGHWAY PATROL,　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　　)

MEMORANDUM AND ORDER

Before the court is the defendant's Motion to Dismiss (Doc. 20). The defendant filed this Motion to Dismiss pursuant to Rule 12(b)(6) and Rule 12(b)(1). The defendant argues the State of Kansas Highway Patrol is immune from Plaintiff's Americans with Disabilities Act claim pursuant to the Eleventh Amendment.

I. Facts

The plaintiff, Barney Miller, applied with the Kansas Highway Patrol for a Communication Specialist position. The plaintiff is visually impaired. The plaintiff was not allowed to test for the Communication Specialist position. The plaintiff was sent a "regret" letter prior to being offered an opportunity to test. The plaintiff alleges failure to accommodate his disability and requests monetary damages.

The defendant filed this Motion to Dismiss pursuant to Rule 12(b)(6) and Rule 12(b)(1). The defendant argues the State of Kansas Highway Patrol is immune from Plaintiff's Americans with Disabilities Act claim pursuant to the Eleventh Amendment.

II. <u>Standard of Review</u>

The defendant argues the state has sovereign immunity as to the plaintiff's Title I Americans with Disabilities claim, therefore, the court is without subject matter jurisdiction. A motion to dismiss based on sovereign immunity is treated as a motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. Pro. 12(b)(1).

However, a different standard is employed regarding the plaintiff's claim regarding Title II. The Tenth Circuit has held that an attack on whether Title II applies to employment discrimination actions does not raise to a jurisdictional question. <u>Davoll v. Webb</u>, 194 F.3d 1116, 1129 (10th Cir. 1999). The plaintiff must only allege a federal cause of action in the complaint to provide the court with jurisdiction. <u>Id.</u> at 1130. The court also reviewed the decision of other circuits, and determined that whether Title II addressed employment was an unsettled question, therefore raising it was not frivolous or immaterial and the federal court clearly maintained jurisdiction. <u>Id.</u> at 1129-1130. Title II is reviewed under Rule 12(b)(6), failure to state a claim.

Pursuant to Rule 12(b)(6), the complaint must contain a short and plain statement showing the pleader is entitled to relief, and a demand for the relief sought. Fed. R. Civ. P. 8(a). The court must determine if the complaint "contains enough facts to state a claim to relief that is plausible on its face." <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting <u>Bell Atlantic Corp. V. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible when the facts alleged lead to the relief requested. <u>Robbins v. Oklahoma ex rel. Dep't of Human Servs.</u>, 519 F.3d 1242, 1247 (10th Cir. 2008). "The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the

pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Id. The allegations of a complaint are taken as true unless contradicted, and disputes must be resolved in favor of the plaintiff. Behagen v. Amateur Basketball Ass'n of U.S.A., 744 F/2d 731, 733 (10th Cir. 1984).

  III. Discussion

  The Americans with Disabilities Act (ADA) has four separate titles: Title I covers employment discrimination, 42 U.S.C. §§ 12111-12117; Title II covers discrimination by government entities, Id. §§ 12131-12165; Title III covers discrimination by places of public accommodation, Id. §§ 12181-12189, and Title IV covers miscellaneous provisions, Id. § § 12201-12213. Part of Title I provides that impermissible employment disability discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). Title I of the Americans with Disabilities Act (ADA) prohibits certain employers, including the States, from discriminating against a qualified individual with a disability because of the disability in regard to job application procedures, hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

  Title II specifies that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs,

3

or activities of a public entity, or be subjected to discrimination by any such entity." The term "public entity" means any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government; and the National Railroad Passenger Corporation, and any cummuter authority." 42 U.S.C. § 12131(1).

The Eleventh Amendment extends to the states sovereign immunity from suits in federal court against a state by private citizens. Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). The protections of the Eleventh Amendment extend to entities considered arms of the state. Unified Sch. Dist. No. 480 v. Epperson, 583 F.2d 1118, 1121 (10th Cir. 1978). There are three exceptions to the Eleventh Amendment. First, a state can waive its Eleventh Amendment immunity and consent to be sued. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). Second, the plaintiff can file suit for prospective injunctive relief against state officials. Ex parte Young, 209 U.S. 123, 159-60, 52 L.Ed. 714 (1908). Third, Congress may abrogate a state's Eleventh Amendment immunity. Seminole Tribe v. Florida, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In this case, the State of Kansas has not consented to suit, and the plaintiff has not filed for injunctive relief against a state official. The Supreme Court has held that Title I of the ADA was not a valid abrogation of the states' Eleventh Amendment immunity. Garrett, 531 U.S. at 374. Therefore, the state is immune from suits alleging violations of Title I. The plaintiff attempts to navigate around this problem by alleging Title II discrimination under the ADA. The plaintiff requests the court hold that the State of Kansas is a public entity, and therefore Title II pertains to public employment by state entities. In support of this argument, the plaintiff relies on U.S. v. Georgia, 546 U.S. 151, 126 S.Ct. 877,

4

163 L.Ed.2d 650 (2006). In this case, a paraplegic state prison inmate brought an action against the Georgia State Department of Corrections, and state prison officials, asserting claims under Title II of the ADA. The Court held that "public entity" included "any State or local government" and "any department, agency, or other instrumentality of a State." Id. at 154, 42 U.S.C. § 12131(1). The Court went on to state that Title II validly abrogates state sovereign immunity. Id. at 159. The U.S v. Georgia case did not address employment, but the services provided by a public entity, the state prison. The plaintiff has shown that Title II validly abrogates state sovereign immunity, but the plaintiff has not shown how Title II applies to employment.

The Tenth Circuit has not adequately addressed whether Title II applies to employment. In Davoll v. Webb, 194 F.3d 1116 (10th Cir. 1999), the court ruled that it did have subject matter jurisdiction over employment actions brought pursuant to Title II. Id. at 1128-29. The Court went on to state that the issue is not a jurisdictional question. Id. at 1130. The Court stated, "we expressly decline to decide whether Title II covers employment discrimination. Instead, we assume that it does and turn to the issues properly on appeal." Id. In Davoll, the Court noted the parties did not properly raise the issue at the district court level, and that many other courts have addressed the issue on motions to dismiss for failure to state a claim or motions for summary judgment. Since it was raised as a jurisdictional issue at the Tenth Circuit, the Court determined it was not a jurisdictional issue, and was not properly before the court.

District courts in the Tenth Circuit have addressed the issue. In Osborne v. Oklahoma Employment Sec. Com'n, 2006 WL 2090089 (W.D.Okla), the court ruled the plaintiff may not assert an employment discrimination claim pursuant to Title II. Id. at 3. The court found that

5

"Congress clearly intended employment discrimination to be governed by Title I; Title II seeks to remedy other forms of discrimination and the differing definitions of "qualified individual with a disability" support this conclusion. 'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" Id. citing Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). The court in Osborne also noted that even if the plaintiff could assert employment claims pursuant to Title II, the Eleventh Amendment immunity would still prohibit the suit as there is not "history and pattern of unconstitutional employment discrimination by the States against the disabled." Id., n. 3, citing Garrett, 531 U.S. at 368. In Cisneros v. Colorado, 2005 WL 1719755 (D.Colo), the court held that the plaintiff's "Title II claim was controlled by Garrett's holding that the ADA, to the extent it attempts to remedy employment discrimination, cannot be considered preventive or remedial legislation addressing a 'pattern of discrimination by the States which violates the Fourteenth Amendment.'" Id. at 5, citing Garrett at 367. The court dismissed the plaintiff's claim as it was barred by the Eleventh Amendment. Id.

A number of circuit courts have addressed the issue of whether Title II applies to employment discrimination. The First Circuit addressed the issued in Currie v. Group Ins. Com'n, 290 F.3d 1 (1st Cir. 2002). The court considered the language of the act, finding that Title I was not an exclusive remedy, and finding that Title II did not "necessarily exclude employment." Id. at 6-7. The Court considered the Department of Justice's regulation, 28 C.F.R. § 35.140 (2001), which states Title II does cover employment practices. Id. Ultimately, the court declined to address any of the federal claims in the case, due to the pendency of the

state court proceedings.  Id. at 9.  In Bledsoe v. Palm Beach County Soil and Water Conservations Dist., 133 F.3d 816 (11th Cir. 1998), the Eleventh Circuit examined the definition of "public entity" under 42 U.S.C. § 12131, "(A) any State or local government; [and] "(B) any department, agency, special purpose district, or other instrumentality of a State or States or local government;..." Id at 821.  The Court held there was extensive legislative commentary regarding the applicability of Title II to employment discrimination.  The Court placed heavy weight on the statements in the of the Report of the United States House of Representative Judiciary Committee, "in the area of employment, title II incorporates the duty set forth in the regulations for Sections 501, 503, and 504 of the Rehabilitation Act to provide a 'reasonable accommodation' that does not constitute an 'undue hardship.'" Id, citing H.R.Rep. No. 101-485(III), at 50 (1990).  The Court also noted the House Report stated, "the forms of discrimination prohibited by section 202 [codified as 42 U.S.C. § 12132] be identical to those set out in the applicable provisions of titles I and III of this legislation....In addition, activities which do not fit into the employment of public accommodations context are governed by the analogous section 504 regulations." Id, citing H.R.Rep. No. 101-485(II), at 84 (1990).  The Bledsoe Court noted that section 504 of the Rehabilitation Act was designed to address employment discrimination, as set out in Consolidated Rail v. Darrone, 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984).  The Court relied on the Second Circuit's analysis and ruled that "the language of Title II's antidiscrimination provision does not limit the ADA's coverage to conduct that occurs in the 'programs, services, or activities' of [a public entity].  Rather, it is a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context,..." Id. at 822, citing Innovative Health Systems, Inc. v. City of White Plains, 117 F.3d 37, 44-45 (2nd Cir.

1997).

The Ninth Circuit addressed this issue, and found that Title II did not allow employment discrimination claims. Zimmerman v. Oregon Dept. Of Justice, 170 F.3d 1169 (9th Cir. 1999), rehearing en banc denied 183 F.3d 1161, cert denied 121 S.Ct. 1186, 531 U.S. 1189, 149 L.Ed.2d 103 (2001). The Ninth Circuit approached the issue very differently than the Eleventh Circuit. The Court in Zimmerman found that Title I applies specifically to employment: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedure, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Court then found that the term "covered entity" to mean not only an employer, but also a governmental employer. Id at 1172. The Court looked at the language of Title II, and employed a statutory construction analysis, finding that Title II applies to the "outputs" of the public agency, and not the "inputs", such as employment. Id at 1174. The Court reasoned that employment is not a service, program, or activity of a public entity. Id. The Court also found that the structure of the ADA shows that Congress intended for Title I to apply to employment, and not Title II. Id. at 1176. Congress specifically separated employment and public services, and defined "qualified individual with a disability" differently in the two sections. Id. Also, Congress gave regulatory authority to different agencies for Title I and Title II, and Congress linked the employment related provisions of the Rehabilitation Act to Title I of the ADA, not to Title II. Id. The court found that since Congress created employment specific provisions in Title I, and not in Title II, the Court must give effect to the difference in wording and thus, the different focus. Id. at 1177, citing Russello v. United States, 464 U.S. 16,

23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). The Court ruled, "when viewed as a whole, the text, context and structure of the ADA show unambiguously that Congress did not intend for Title II to apply to employment." Id. at 1178.

The Attorney General regulation 28 C.F.R. § 35.140 states:

> (a) No qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in employment under any service, program, or activity conducted by a public entity.
> (b)(1) For purposes of this part, the requirements of title I of the Act, as established by the regulations of the Equal Employment Opportunity Commission in 29 CFR part 1630, apply to employment in any service, program or activity conducted by a public entity if that public entity is also subject to the jurisdiction of title I.
> (2) For the purposes of this part, the requirement of section 504 of the Rehabilitation Act of 1973, as established by the regulations of the Department of Justice in 28 CFR part 41, as those requirements pertain to employment, apply to employment in any service, program, or activity conducted by a public entity if that public entity is not also subject to the jurisdiction of title I.

As stated above, a few courts have relied on the Attorney General's regulation 28 C.F.R. § 35.140 in finding that Title II applies to employment. See Bledsoe v. Palm Beach County Soil and Water Conservation Dist., 133 F.3d 816 (11th Cir. 1998); Winokur v. Office of Court Admin., 190 F.Supp.2d 444 (E.D.N.Y. 2000). Yet other cases have held that the regulation directly contradicted the intent of the statute, and was not a basis for a claim of employment discrimination pursuant to Title II. See Filush v. Town of Weston, 266 F.Supp.2d 322 (D.Conn. 2003); Zimmerman v. Oregon Dept. Of Justice, 170 F.3d 1169 (9th Cir. 1999), rehearing en banc denied 183 F.3d 1161, cert denied 121 S.Ct. 1186, 531 U.S. 1189, 149 L.Ed.2d 103 (2001). The Filush court said that because the regulation contradicted the intent of the statute, it could not hold the regulation valid. 266 F.Supp.2d at 331. "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear

9

congressional intent." Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 N. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

The court should look to the plain language of the statute and "give words their ordinary or natural meaning." Leocal v. Ashcroft, 543 U.S. 1, 8-9, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004). "When the court reviews the agency's construction of the statute which it administers," it must answer "whether Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842. If congressional intent is clear, the inquiry is over. Id. at 842-43. If the statute is silent or ambiguous, the question for the court is whether the agency's answer is based on a permissible construction of the statute. Id.

The statutes at issue are as follows: 42 U.S.C. § 12112(a) states "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12131 prohibits any public entity from discriminating against qualified persons with disabilities in the provision or operation of public services, programs, or activities. The Act defines the term "public entity" to include state and local governments, as well as their agencies and instrumentalities. 42 U.S.C. § 12131(1). Section 12112 clearly addresses employment and all activities related to employment. The term "employment" is absent from section 12131.

Title II is based on the language of Section 504 of the Rehabilitation Act of 1973, without the federally funded requirement. "Congress' intent was that Title II extend the protections of the Rehabilitation Act to cover all programs of state or local governments,

10

regardless of the receipt of federal financial assistance." Pace v. Bogalusa City School Bd., 403 F.3d 272, 289 n. 76 (5th Cir. 2005). Again, this court would note the use of the term "programs."

It is also important to note the difference in wording used by Congress in describing "qualified individual with a disability." In Title I, "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8). In Title II, "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."

The court in Tennessee v. Lane, 541 U.S. 509, 124 S.Ct. 1978, (2004), stated "Congress enacted Title II against a backdrop of pervasive unequal treatment of persons with disabilities in the administration of state services and programs, including systematic deprivations of fundamental rights." Id. at 524. "The historical experience that Title II reflects is also documented in this Court's cases, which have identified unconstitutional treatment of disabled persons by state agencies in a variety of settings, including unjustified commitment, the abuse and neglect of persons committed to state mental health hospitals, and irrational discrimination in zoning decisions. The decisions of other courts, too, document a pattern of unequal treatment in the administration of a wide range of public services, programs, and activities, including the penal system, public education, and voting." Id. at 524-25. It is important to note the court

discusses the "administration of state services and programs" and also the "administration of a wide range of public services, programs, and activities" in describing the function of Title II. Employment is not an administration of state services. The Ninth Circuit argument supports this interpretation, that employment is a function of running the services, or as the Ninth Circuit stated, the "inputs" of the agency, compared to the services provided, or the "outputs" of the agency.

The plain language of Title I shows congress' intent to address employment under one section of the statute. Although the programs described in Title II are not conclusive, assuming that Congress intended the list of programs to include employment is redundant, as Congress purposely created an entire section dedicated to employment discrimination. Employment specific language was included in Title I, but excluded from Title II. Title I is labeled "Employment" whereas Title II is labeled "Public Services." Title I is enforced by the Equal Employment Opportunity Commission, and incorporates provisions of the Civil Rights Act. 42 U.S.C. § § 12116 and 12117. Title II is enforced by the Attorney General and incorporates provisions of the Rehabilitation Act. 42 U.S.C. § § 12113 and 12114. Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). The text and the structure of the ADA show that Congress did not intend Title II to apply to employment. This court finds that the Attorney General regulation does not correctly state the intent of the statute as Title II does not apply to employment discrimination.

IV. Conclusion

The plaintiff's employment discrimination claim cannot survive a motion to dismiss. If the plaintiff is asserting the claim pursuant to Title I of the ADA, the claims is dismissed pursuant to Rule 12(b)(1) for a lack of jurisdiction, as the State is immune from suit. If the plaintiff is asserting a claim pursuant to Title II of the ADA, the claim is dismissed pursuant to Rule 12(b)(6) for failure to state a claim, as the plaintiff has not shown that Title II of the ADA applies to employment discrimination claims.

IT IS THEREFORE ORDERED that the plaintiff recover nothing, and the action be dismissed on the merits.

IT IS SO ORDERED this 18th day of December, 2009.

    s/ Wesley E. Brown
    Wesley E. Brown
    United State District Court Judge